## Case No. 1,823.

In re BRECK et al.

[13 N. B. R. (1876) 216.][1]

District Court, S. D. New York.

BANKRUPTCY —REGISTER — RIGHTS AND DUTIES— REVIEWING DETERMINATION OF — CONTEMPT — WHAT CONSTITUTES.

1. A register is not bound to countersign a check unless the fee is first tendered to him.

2. A register has a lien on the fund in court which has been awarded to a party.

3. A party who seeks to review an act of a register must do so in a respectful manner.

---

[2] [From 12 N. B. R. 216.]

[1] [Reprinted by permission.]

4. A wanton attack upon the character of a register in a paper filed before the judge is a contempt of court.

[In bankruptcy. In the matter of William P. Breck and William B. Schermerhorn.]

[By I. T. Williams, Register:]

I, the undersigned register in charge of the above-entitled matter, do hereby certify that a paper purporting to be affidavits of certain parties, with an indorsement thereon by the district judge, in the words "I should be glad to have Register Williams examine these papers, and state whether there is any reason why I should not countersign the check. S. B." has been filed with me.

In answer to the inquiry put by the district judge I beg to say that general order No. 30 allows the register ten cents for certifying a check, and general order No. 29 provides that the "fee of the registers * * * shall be paid or secured in all cases before they shall be compelled to perform the duties required of them." As there is no pretense that this fee of ten cents for certifying the proffered check was tendered or secured, there was clearly no obligation on my part to countersign the check. I believe this will be a sufficient answer to the question put to me by the district judge—for it will not be suggested that a precedent should be established to the effect that whenever a register refuses to perform a duty for want of payment of the fee prescribed therefor, the judge will for that reason perform the duty himself.

There are other reasons why the district judge should not countersign the check in question. This matter came before me upon an order of reference requiring me to take testimony upon the issue and report the same to the court, with my opinion thereon. Such testimony was promptly taken and a careful opinion was written thereon. A bill for such services, which I presume to be correct, was presented to the attorney, and payment of it was refused. I, however, sent up the papers, notwithstanding such non-payment. After they had been sent up, some papers were handed to me as from the attorney, which—as they did not belong on file, and had, for the reason aforesaid, no significance—I at once returned to him. The decision of the court was adverse to my opinion, and the claimant was allowed the sum of two hundred and thirteen dollars and thirty-four cents. Upon that money I have a clear and unquestionable lien for my fees. If the district judge shall countersign the check, the money will be drawn thereon, and my lien will be taken away. For the services rendered under the order of reference—if performed as a lawyer—two hundred and fifty dollars would have been a reasonable charge. But, rendered as a register, they amount—as the fee-bill stands to-day (they must be taxed according to the fee-bill as it stands at the hour of taxation)—to about the sum of forty-six dollars and seventy cents, exclusive of the additional fees that have been incurred by these subsequent proceedings. As the fee-bill stood at the time of the presentation of the bill, they would have taxed at a higher sum, as the services were done under an order of reference, and therefore the provision of the act of June 22 [1874, c. 390, § 18; 18 Stat. 184], reducing the fees to one-half, would not have applied. It appears pretty clearly from the papers that were the district judge to countersign the check all compensation for my services would be lost. The attorney in his affidavit says that when he learnt that the register had sent up the papers "this deponent then supposed that said register had abandoned his claim for fees in this matter." This language does not leave it open to the inference that he refused to accept such supposed abandonment, and his subsequent conduct would indicate that he still deemed the claim abandoned, and had no intention of ever paying the same.

As to the allegation that "no certificate as to the issues raised before him in respect to his charges for services" was sent up with the certificate and opinion, so as aforesaid sent up, I certify that at the time I sent up such certificate, no issues, verbal or written, had ever been made, framed, or submitted to me, nor had any objection to my bill for services been pointed out, or suggested, to my knowledge, nor has anything of the kind been since done, unless there was something in the papers subsequently handed to me, and which were returned by me as above stated, which would bear such an interpretation. I did not examine these papers, as I had no occasion to do so—the papers upon the reference having before that time gone up. Nor has any fee or security been tendered or offered to me except the sum of fifty cents sent to me by the office boy, whom I suppose to be one of the affiants. These are the reasons which I submit to the district judge in answer to the inquiry indorsed upon said affidavits.

I wish here and at all times to record my protest against the practice adopted in this case. I deny the right of any one to file a libel against me in the district court—except upon the admiralty side of it. The holding of this office cannot deprive me of the right every citizen has of protecting his personal character, if not otherwise, at least, by the verdict of a jury. We have the authority of the chief justice of the court of appeals, that there are a class of lawyers who invariably malign the judge that decides a case against them. Had my opinion been favorable to the creditor, is there any doubt that my fees would have been promptly paid? Does any man believe that in that case any malversation in office would have been suggested? As it is, the attorney may place upon the lasting records of the court a malignant libel which must there remain for

any unfriendly eye in all coming time to feast upon, and for the sharp grief of those who shall hereafter "speak with the enemies in the gate." Anything may be written—only pen, paper, and ink, are required. They who would make such papers enduring public records, approach the files of the court with velvet tread. Their footsteps are unheard. Truly: Ibaut sola sub nocte per umbram. I cannot think that the public interest requires that any office, however humble, which has the high sanction of law, should be so exposed that no honorable man can fill it. I know that I could not keep a clerk—who should be worthy of the place—if I were to permit him to be thus exposed. I recognize the right of every lawyer to review my official acts, and to file charges against me by way of impeachment; but beyond this he has no privilege. When he reviews me he is bound to do so as respectfully as if he were seeking to review a justice of the peace upon certiorari—or the order of a judge at chambers. In such cases it is the immemorial usage of the court of review to order all impertinent and scandalous matter, reflecting upon the officer whose acts are sought to be reviewed, to be stricken out before the court will proceed to hear the case on its merits. The court have in many instances refused to review an order or judgment until all personal matters are expunged from the brief of counsel. This practice has been thought necessary in order to maintain the honor and dignity of the courts, and to prevent such minor offices from falling so into contempt that honorable men will not hold them. If the district judge countersign the check, he will do so because the law requires it—and the law requires it as much if the register has acted mistakenly, as if he has acted corruptly. The affiant closes his affidavit with this charge: "And this deponent believes that in consequence of his refusal to pay the illegal fees demanded by said register, said register is determined to hinder and delay this deponent by every possible means from obtaining for the petitioner the money which this court has ordered to be paid him." These words add nothing to the facts of his case. He swears that the fees demanded are illegal. This is swearing to the law, not to a fact. I differ from him in this respect. He sets forth nothing from which this court could adjudge them illegal. This attack upon a register is as truly a contempt of court, as if it were made against a judge "holding the chambers of the court." I ask the court to deal with that charge as for a contempt. It is better that this court should deal with it as for a contempt than that some other court should deal with it as a libel. The law punishes libel by indictment in the interest of the public peace. The government takes the weapon from the hands of every man, and says, "The government—through their courts—will protect you." But if the courts will not protect, then the government surrenders back the weapon. There is no human law that commands me to be charged of record with official corruption and perjury, without redress. These are not the words of a merely sensitive man. I speak in the interest of two hundred and fifty registers—and not alone in their interest. I know that there is nothing, even in these degenerate times, more injurious to society, to government, and to civilization than such efforts to degrade judicial functions. That these functions are humble—only quasi judicial—is not even a palliation of the wrong, but rather an aggravation.

If the charge here made were ever so true it does not help the case of the affiant. It is in no way necessary to his case. It does not tend in the remotest degree to help it. My motives may be material upon an official impeachment, but upon a simple review of my acts or omissions they are in no sense material. The court will reverse a judgment or an act as quickly, if done from the purest, as if done from the wickedest motives. I do not characterize the affidavit in this official certificate. To do so would be in some degree to recognize the right to make the charge. Were it ever so true, it would be equally unjustifiable, as the court is not asked to try me for an offense, but only to countersign a check. Neither my moral character, nor the moral character of my acts, can have the slightest effect upon the duty of the district judge, as to such countersigning the check in question. I had intended to append hereto the affidavit of my managing clerk, who is fully conversant with all the matters alluded to in the affidavits. But on reflection I think such an affidavit would not be within the privilege accorded by law to judicial proceedings, and forbear to do so. I ask this court, in justice to the public—in the interests of the administration of our bankruptcy system, and in justice to itself and to me, to deal with the attorney as for a contempt. On such a proceeding I may without impropriety submit the affidavits of those persons in my office who have been eye and ear witnesses of the matters referred to.

Respectfully submitted.

NOTE [from original report.] The publication of the above opinion has been delayed for some time to await the action of the judge, but the check has not yet been countersigned.

BRECK (EDGARTON v.). See Case No. 4,279.

BRECK (JACKSON v.). See Case No. 7,132.